THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

ELMER WALTON LEE,

    Petitioner,

v.

JAMES A. YATES,

    Respondent.

No. C07-2184 RBL

ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court for consideration of Petitioner's Petition for Writ of Habeas Corpus [Dkt. #1]. The Court has reviewed the materials submitted in support of and opposition to the Petition. For the following reasons, Petitioner's Petition for Writ of Habeas Corpus is DENIED on all grounds.

**Background**

Petitioner Elmer Walton Lee was convicted by jury trial of lewd acts upon a child under age 14 (Cal. Penal Code § 288(a)), continuous sexual abuse of a child under age 14 (Cal. Penal Code § 288.5(a)), and lewd acts upon a child age 15 (Cal. Penal Code § 288(c)(1)). During petitioner's trial, the trial court found that the petitioner had a prior lewd conduct serious felony conviction from Idaho in 1987 (Cal. Penal Code §§ 667(b)-(I), 1170.12). The trial court also found that petitioner was a habitual sex offender as to

the § 288(a) and § 288.5(a) charges (Cal. Penal Code § 667.71). Petitioner was sentenced to 111 years to life. Petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment of the trial court.[1] Petitioner did not appeal his conviction to the California Supreme Court.

Petitioner filed a Petition for Writ of Habeas Corpus in Butte County Superior Court on July 11, 2005. The petition was denied on July 12, 2005. Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court on or about July 11, 2005. The petition was denied on May 17, 2006. Petitioner filed a second Petition for Writ of Habeas Corpus in Butte County Superior Court on May 4, 2006. The petition was denied on May 15, 2006. Petitioner filed a Petition for Writ of Habeas Corpus in the California Court of Appeal, Third Appellate District, on June 15, 2006. The petition was denied on June 22, 2006. Petitioner filed a second Petition for Writ of Habeas Corpus in the California Supreme Court on July 27, 2006. The petition was denied on February 7, 2007. Petitioner filed a third Petition for Writ of Habeas Corpus in the California Supreme Court on July 2, 2007. The petition was denied on December 12, 2007. Petitioner filed this Petition for Writ of Habeas Corpus in the United States District Court for the Eastern District of California on October 15, 2007.

## Factual Background

Petitioner states three grounds for habeas corpus relief in his petition. First, petitioner alleges that he never admitted he had a prior conviction or waived his right to a jury trial on the issue of whether he had a prior conviction. Second, petitioner claims that the admission of Aimee Pettigrew's testimony and a note written by the victim was erroneous and should result in an overturned conviction. Third, petitioner argues that he was denied due process when the prosecutor committed misconduct during closing argument by impermissibly commenting on petitioner's constitutional right not to testify in his own defense.

1.   **Prior Conviction Admission and Waiver**

On the first day of trial, defense counsel stated that the petitioner "would be prepared to admit the previous conviction out of the presence of the jury, however, without conceding that it is applicable as a strike or as is alleged in the special allegations." Dialogue between the court and defense counsel

---

[1] The Court of Appeal modified the trial court's judgment by striking the five-year enhancement on the § 288(c)(1) conviction, but otherwise affirmed the trial court's judgment.

followed:

    THE COURT: Is your client waiving his right to a jury trial under *Apprendi* to determine the truth of the prior for both strike purposes and prior prison term purposes?

    MR. BERGLUND: Yes.

    THE COURT: I'll get that appropriate waiver. It won't come into play until there's a conviction, so I'll take the waiver at that time. But at least I'm not going to hold the jury. I probably will - - it's been my practice to hold the jury in case you change your mind until I get it. Maybe I'll take it someplace in between. We'll see where we go.

    MR. BERGLUND: That's fine.

    After the jury returned with its verdicts, the trial court discharged the jury and stated as follows:

    THE COURT: "Prior to jury selection, counsel had requested that the issues involving the special allegation, and special allegation, habitual sexual offender, and special allegation strike would be bifurcated. At the bench, I questioned whether the jury could be released, and counsel stipulated it could."

    The court asked defense counsel if there was anything further, and counsel responded by saying, "No."

    **2.**    **Admission of Aimee Pettigrew's Testimony and "The Note"**

    During trial, the prosecution presented the testimony of Aimee Pettigrew. Aimee testified about a conversation she had with the victim during the victim's ninth grade year. The victim told Aimee that her grandparents would find out about her belly button ring because the defendant had been touching her. Aimee testified that she told the victim to write a letter and place it in a box that she kept for writings that expressed her wishes. The victim wrote a letter, stating, "God, please help me tell someone that can do something about my grandpa molesting me and not to hurt in the meantime. God, please help me." The defense attacked the victim's motives as improper, presenting testimony from the victim's grandmother, Marsha Watson, and other witnesses. The victim's grandmother testified that the victim was a liar, even from the time she was very young. The victim's grandmother testified that the victim would start fights with her so that she could move back with her father. Ms. Watson testified that the victim said that she couldn't stick her grandmother with child abuse but could 'stick' her grandfather with sexual abuse. The prosecution offered the victim's "prayer note" as a prior consistent statement rebutting the defense's attacks on her motives. The note was admitted as evidence over the defendant's objection.

**3.     Prosecutorial Misconduct in Closing Argument**

During closing argument, the prosecutor stated:

> I want to start by reminding you of something we had discussed during jury selection. The fact that these kinds of cases involve, not only secrecy, they require secrecy. That's the only way these type of crimes happen is in secrecy and with privacy or absolute secrecy. Therefore, only the offender and the victim are the only two who know with absolute certainty what has happened.

> And credibility is always the issue in a case like this. And you have an instruction on assessing the credibility of the witnesses. And that instruction lists several different things that you may consider in assessing the credibility of a witness.

The Court of Appeal concluded that the prosecutor's statements were not a comment on the defendant's decision not to testify in his own defense, but were instead a suggestion that credibility was a key issue in the case.

**Discussion**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant an application for habeas corpus relief arising from a state court adjudication on the merits if the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is contrary to clearly established federal law under the AEDPA where the state court applies a rule that runs contrary to controlling Supreme Court precedent or where the state court is confronted with a factual scenario that is "materially indistinguishable" from the facts of a Supreme Court decision but reaches a result different than the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

**A.     Prior Conviction Admission and Waiver**

Petitioner claims that he did not waive his right to a jury trial on his prior conviction. He argues that under California Penal Code § 667.71 and *Boykin v. Alabama*, 395 U.S. 238 (1969), the court must have either taken his admission of the prior conviction or required a jury finding that he had a prior conviction.

In order to prevail on his claim, petitioner must show that the Court of Appeal's decision was either contrary to clearly established federal law or included an unreasonable application of established federal

law.  28 U.S.C. § 2254(d)(1); *Lockyer*, 538 F.3d at 73.  Under federal law, a criminal defendant does not have a right to a jury trial for purposes of determining the existence of a prior conviction.  *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224, 246 (1998).  Petitioner's arguments relating to California state law are insufficient to grant habeas relief because they do not show that the Court of Appeal incorrectly applied any federal law.  Because no federal right to a jury trial for the purposes of determining the existence of a prior conviction exists, petitioner's claims regarding lack of a waiver of his right to a jury trial are insufficient to grant habeas corpus relief.

### B.     Admission of Aimee Pettigrew's Testimony and "The Note"

Petitioner claims that admitting the testimony of Aimee Pettigrew and the victim's note was erroneous and prejudiced the proceedings to such a degree as to make his trial fundamentally unfair.  He argues that the note should not have been admitted as a prior consistent statement under California Evidence Code § 1236.

In order to prevail on his claim, petitioner must show that the Court of Appeal's decision was either contrary to clearly established federal law or included an unreasonable application of established federal law.  28 U.S.C. § 2254(d)(1); *Lockyer*, 538 F.3d at 73.  On federal habeas review, federal courts do not review questions of state evidence law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Instead, federal courts consider whether a petitioner's conviction violated constitutional norms because the proceedings were so fatally infected with error as to render them fundamentally unfair.  *Jammal v. Van De Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  So long as a jury may draw permissible inferences from a piece of evidence, its admission will not violate due process.  *Id*. at 920. Compliance with state evidentiary law neither proves that the proceedings comport with due process nor that they did not comport with federal due process concerns.  *Id*. at 919-20.  Instead, the admission of evidence must have prevented the petitioner from having a fair trial.  *See Henry v. Estelle*, 33 F.3d 1037, 1042 (9th Cir. 1994), *rev'd sub nom*. *Duncan v. Henry*, 513 U.S. 364 (1995).

Petitioner's defense included attacks on the victim's character for truthfulness.  The petitioner presented testimony that the victim was a liar, that she disliked her grandmother, and that she thought she could get away from her grandparents by accusing her grandfather of molestation.  The "Prayer Note" and Ms. Pettigrew's testimony were introduced as prior consistent statements of the victim.  The jury was

presented with both the defense's theory that the victim was a liar who was attempting to frame her grandfather so that she could live with her father again and with the prosecution's theory that Ms. Pettigrew's testimony and the "Prayer Note" corroborate the victim's statements that she had been molested by her grandfather. The jury had an opportunity to weigh the credibility of both Ms. Pettigrew and the defense's witnesses. Even if the admission of Ms. Pettigrew's testimony and the "Prayer Note" was improper under California state law, its admission does not rise to the level of depriving petitioner of a fair trial. The jury could draw the permissible inference that Ms. Pettigrew was a credible witness. Because admission of Ms. Pettigrew's testimony and the "Prayer Note" did not render petitioner's trial fundamentally unfair, petitioner's claims regarding evidentiary admissions are insufficient to grant habeas corpus relief.

### C. Prosecutorial Misconduct in Closing Argument

Petitioner argues that the prosecutor impermissibly referred to the defendant's decision not to testify in his own defense during closing argument. He argues that such a comment violates federal constitutional guarantees and due process.

In order to prevail on his argument, petitioner must show that the prosecutor's statements were not merely improper, but resulted in a violation of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000). Federal courts in habeas cases review a prosecutor's conduct to determine whether that conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Hall v. Whitley*, 935 F.2d 165, 165 (9th Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

While the prosecutor's comments in closing argument were somewhat questionable, they do not come close to constituting a due process violation. The comments might be seen as a comment on the petitioner's exercise of his constitutional right not to testify. However, the prosecutor's comments would more likely be interpreted by the jury as an attempt to convince them to make a positive credibility assessment of the victim. Further, the jury received instructions stating that they could not consider the petitioner's decision not to testify because he had a constitutional right to make such a choice. While the prosecutor's comments in closing were somewhat questionable, they do not rise to the level of a due process violation.

**Conclusion**

For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus [Dkt. #1] is hereby DENIED.  The Court declines to issue a Certificate of Appealability because the petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 16th day of December, 2009.

   /s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE